698 F.2d 593
 4 Employee Benefits Ca 2160
 Harold MILES, Eugene Darlak, Timothy Moriarty, James
Stuermer and Edward Zastrow, Plaintiffs-Appellees,
v.
The NEW YORK STATE TEAMSTERS CONFERENCE PENSION AND
RETIREMENT FUND EMPLOYEE PENSION BENEFIT PLAN,
Defendant-Appellant,
Ervin Walker, as President of Local Union No. 449 of
International Brotherhood of Teamsters, Chauffeurs,
Warehousemen and Helpers of America, an Unincorporated
Association, and Stanley Clayton, Individually and as
President of Local Union No. 375 of the International
Brotherhood of Teamsters, Chauffeurs, Warehousemen and
Helpers of America, an Unincorporated Association, Defendants.
 No. 202, Docket 82-7274.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 20, 1982.
Decided Jan. 20, 1983.
 
 Robert J. Feldman, Buffalo, N.Y. (Gross, Shuman, Brizdle, Laub & Gilfillan, P.C., Buffalo, N.Y., David C. Laub, Buffalo, N.Y., of counsel), for plaintiffs-appellees.
 Peter P. Paravati, P.C., Utica, N.Y., for defendant-appellant.
 Before LUMBARD, MESKILL and CARDAMONE, Circuit Judges.
 LUMBARD, Circuit Judge:
 
 
 1
 Plaintiffs, four employees and one former employee of the Continental Can Co., Inc., commenced this action in the Western District of New York in August 1977 under the Employee Retirement Income Security Act of 1974, 29 U.S.C. Sec. 1001 et seq. (1976) (ERISA), to determine their eligibility for pension benefits from the defendant New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan (the Teamsters Plan). The plaintiffs, all of whom had worked for Continental for some years before Continental began to contribute to the Teamsters Plan on their behalf, sought through this action to establish their right to past service credit for years during which employer contributions were not paid. Judge Elfvin conducted a bench trial of the action from August 25th to August 28th, 1980, after which, on March 11, 1982 he ruled that the decision of the Teamsters Plan's Board of Trustees to deny the plaintiffs "new group" status, and with it, past service credit, was "arbitrary and capricious." He ordered the Teamsters Plan to grant the plaintiffs past service credit and to pay benefits accordingly. On June 7, 1982 Judge Elfvin granted the plaintiffs' post-trial motion for attorneys' fees under 29 U.S.C. Sec. 1132(g)(1) (Supp. IV 1980). The Teamsters Plan now appeals from the judgment against it and the award of attorneys' fees. We reverse the judgment appealed from, and vacate the award of attorneys' fees.
 
 
 2
 With one exception to be noted later, the facts, for purposes of this appeal, are those found by the district court. Continental, at all relevant times, has operated three plants in the Buffalo, New York area. Prior to July 1, 1969 the plants' truck drivers were assigned to separate corporate divisions: the drivers at the Clay Street plant in Tonawanda, New York to Plant No. 418; the drivers at the Colvin Boulevard plant in Buffalo to Plant No. 81; and the drivers at the Shawnee Road plant in North Tonawanda, New York to Plant No. 506.
 
 
 3
 The plaintiffs are five drivers who prior to July 1, 1969 were assigned to Plant No. 506 at Shawnee Road. Teamsters Union Local 449 represented the drivers at the Clay Street and Colvin Boulevard plants and Teamsters Union Local 375 represented the plaintiffs. In a letter to Local 449 dated December 11, 1967 Continental agreed to abide by the terms of the so-called "National Master Freight Agreement" (NMFA). The NMFA required Continental to contribute to the Teamsters Plan on behalf of the Local 449 drivers. Continental did not contribute to the Teamsters Plan on behalf of the plaintiffs, who instead participated in a corporate pension plan.
 
 
 4
 On July 1, 1969 Continental merged the three trucking divisions into a single Plant No. 490. The merger did not entail a physical transfer of drivers but involved only minor changes in route assignments and the introduction of a central dispatch system. Because Local 449 had a union shop agreement with Continental, the merger of the drivers into a single bargaining unit required the plaintiffs to transfer their membership from Local 375 to Local 449. Concerned that the plaintiffs would not receive past service credit under the Teamsters Plan for pre-merger employment,[1] the president of Local 375, Stanley Clayton, asked Continental to apply to the Teamsters Plan to have the plaintiffs treated as a "new group." The new group rule is incorporated in section 3(2) of the Teamsters Plan.[2] Under the rule, an employee who joins the Teamsters Plan as part of a new group is entitled to receive credit for past service with the employer, up to a maximum of twenty years, if the employee works for the employer for another five years and the employer contributes to the Teamsters Plan on behalf of the employee for those five years. A new group is a unit of employees which commences participation in the Teamsters Plan on the same date that the relevant employer (the "Participating Employer"), first becomes obligated to and does make contributions to the Plan on its employees' behalf. (The "Applicable Effective Date").[3] The Participating Employer need not be the corporation as a whole, but may instead be a corporate division or plant. The purpose of the rule is to encourage new bargaining units to join the Teamsters Plan.
 
 
 5
 In response to Clayton's request, Continental on September 9, 1969 sent a letter to the Teamsters Plan's Board of Trustees requesting that the plaintiffs be accepted into the plan as a new group. In the letter, Continental offered to pay five years' worth of contributions on behalf of any Local 375 driver who retired before completing five years of service under the Teamsters Plan. The letter in this respect conflicted with the new group rule, since the rule requires the employee to be employed under the Teamsters Plan for at least five years in order to receive past service credit.
 
 
 6
 The Board of Trustees considered Continental's letter at its September, 1969 meeting. The Board voted unanimously to treat the plaintiffs as new employees not entitled to past service credit. The Board apparently believed that Continental had physically transferred the plaintiffs from their previous plant to a plant already participating in the Teamsters Plan. Clayton was a member of the Board and was present at the meeting. He attempted to explain to the other Board members that there had been no physical transfer but merely a merger of operating divisions. However, Clayton agreed that Continental's request for new group status for the plaintiffs could not be approved because of the conflict between Continental's offer and the new group rule's requirement of five years actual service. Clayton told the Board that he would request Continental to provide further information on the facts of the plaintiffs' case. On October 15, 1969, before receiving any additional information, the Board told Continental by letter that its application on behalf of the plaintiffs had been rejected.
 
 
 7
 In early September, 1969, an accident required one of the Local 375 drivers, Timothy Moriarty, to be hospitalized for several weeks. Moriarty applied for disability benefits from the New York State Teamsters Health and Hospital Fund. The Health and Hospital Fund and the Teamsters Plan had the same address and manager and very similar provisions. Approximately one month after his accident Moriarty began to receive benefits from the Health and Hospital Fund. Those benefits should not have been paid unless Moriarty qualified for past service credit under the new group rule of the Health and Hospital Fund.
 
 
 8
 In January, 1970, Local 449 and Continental executed a new participation agreement that required Continental to contribute to the Teamsters Plan on behalf of employees of "Continental Can Co., Inc. # 490, Clay Street, Tonawanda, N.Y." The agreement required Continental to make payments retroactive from July 1, 1969. Ervin Walker, the president of Local 449 and a defendant in this proceeding, testified that the new participation agreement must have been executed because a new group joined the plan.
 
 
 9
 At the January, 1970, meeting of the Teamsters Plan Board of Trustees, Clayton again brought the plaintiffs' situation to the attention of the Board. He argued that the plaintiffs constituted a new group and were entitled to past service credit. The Board did not take formal action on the request for new group status, but instead asked Clayton to provide a letter describing Continental's merger of its trucking operations. Clayton apparently never sent the requested letter.
 
 
 10
 Clayton again raised the matter at the Board's next meeting, held from February 26 to March 2, 1970. According to Clayton, several of the Trustees began at this meeting to understand that Continental had not physically transferred the plaintiffs. The Board, however, again took no formal action on the request for new group status, but instead tabled further review of the plaintiffs' case until it received a letter from Local 449 detailing the plaintiffs' situation. Apparently the Board did not, following the meeting, request Local 449 to send it a letter, nor was such a letter ever received. The Board did not, at any time, formally rescind its September, 1969 vote denying the plaintiffs new group status.
 
 
 11
 The Board did not again consider the plaintiffs' status until the issue was raised by the retirement of plaintiff Harold Miles on January 9, 1976. Several months prior to his retirement Miles had submitted an application for pension benefits. On January 14, 1976 the administrator of the Teamsters Plan informed Miles by letter that his application for a pension had been rejected because he had only six and one-half years credited service under the plan. The plan required fifteen years service for payment of a pension. Miles complained to Clayton that the Teamsters Plan had not granted him past service credit. Clayton raised Miles' entitlement to past service credit at several Board meetings in 1976. In response, the Board referred to the minutes of its 1969 and 1970 meetings and again concluded that the plaintiffs were not entitled to past service credit under the new group rule. Although the membership of the Board had partially changed between 1969 and 1976, the 1976 Board did not attempt to investigate the facts itself.
 
 
 12
 This action was brought on August 8, 1977 when Miles and the other drivers who belonged to Local 375 prior to July 1, 1969--Eugene Darlak, Timothy Moriarty, James Stuermer and Edward Zastrow--filed their complaint.
 
 
 13
 The plaintiffs' second amended complaint, filed on August 7, 1980, named as defendants the Teamsters Plan, Ervin Walker in his official capacity as president of Local 449, and Clayton, individually and in his official capacity as president of Local 375. The second amended complaint alleged seven causes of action, six pursuant to 29 U.S.C. Sec. 1132(a)(1) and one under state law. The first three causes of action were asserted by Miles against the Teamsters Plan. The next three causes of action corresponded to the first three, except that they were asserted by Darlak, Moriarty, Stuermer and Zastrow. In the first and fourth causes of action the plaintiffs alleged that they, Continental, and Locals 375 and 449 had agreed at the time of the 1969 transfer that the plaintiffs would be accepted into the Teamsters Plan as a new group and would receive past service credit. In the second and fifth causes of action the plaintiffs alleged that the Board of Trustees had acted arbitrarily and capriciously in denying them new group status. In the third and sixth causes of action the plaintiffs alleged that the Board had approved their request for new group status at a meeting held in late 1969 or early 1970. The seventh cause of action, asserted by the plaintiffs jointly against Walker in his official capacity and against Clayton personally and in his official capacity, alleged that Clayton and Locals 375 and 449 fraudulently misrepresented to the plaintiffs in 1969 that they would receive past service credit if they transferred membership from Local 375 to Local 449 and worked for five years under the plan. As relief, Miles requested the court to order the Teamsters Plan to pay him a pension on the basis of full credit for past service. The other four plaintiffs, who had not retired, requested an order granting them past service credit under the plan. All of the plaintiffs also sought compensatory and punitive damages from Walker and Clayton.
 
 
 14
 In Judge Elfvin's decision, filed March 11, 1982, he concluded that the Board of Trustees had acted arbitrarily and capriciously in denying the plaintiffs past service credit, and he granted judgment to the plaintiffs on their second and fifth causes of action. He concluded that the plaintiffs' remaining causes of action were unsupported by the facts. On June 7, 1982, Judge Elfvin granted the plaintiffs' post-trial motion for an award of attorneys' fees under 29 U.S.C. Sec. 1132(g)(1). The judge ruled that the relative merits of the parties' positions, the "extremely cavalier" attitude of the Board toward the plaintiffs' application for new group status, and the need to deter "callous" behavior by pension plan trustees justified an award of attorneys' fees against the Teamsters Plan. Finding that the plaintiffs' attorneys were entitled to compensation for the risk they had assumed in representing plaintiffs on a contingent fee basis, the judge increased the final award of attorneys' fees by fifty percent over the "lodestar" figure submitted by the attorneys. The Teamsters Plan appeals from the judgment for the plaintiffs and from the award of attorneys' fees.[4]
 
 
 15
 The Teamsters Plan argues that the plaintiffs' claims are barred by the statute of limitations. We disagree. As ERISA does not prescribe a limitations period for actions under Sec. 1132, the controlling limitations period is that specified in the most nearly analogous state limitations statute. See Board of Regents v. Tomanio, 446 U.S. 478, 483-84, 100 S.Ct. 1790, 1794-95, 64 L.Ed.2d 440 (1980). Here, the six-year limitations period prescribed by New York's C.P.L.R. Sec. 213 controls. See Valle v. Joint Plumbing Indus. Bd., 623 F.2d 196, 202 n. 10 (2d Cir.1980). A plaintiff's ERISA cause of action accrues, and the six-year limitations period begins to run, "when there has been 'a repudiation by the fiduciary which is clear and made known to the beneficiaries.' " Id., quoting In re Barabash, 31 N.Y.2d 76, 80, 334 N.Y.S.2d 890, 893, 286 N.E.2d 268, 270 (1972). See also Kosty v. Lewis, 115 U.S.App.D.C. 343, 319 F.2d 744, 750 (1963), cert. denied, 375 U.S. 964, 84 S.Ct. 482, 11 L.Ed.2d 414 (1964). The Teamsters Plan argues that the plaintiffs had clear notice in 1969 that they would not be treated as a new group, and that the plaintiffs' suit is therefore barred by their failure to commence suit by 1975. Judge Elfvin, however, found that the plaintiffs did not receive clear notice that the Board had repudiated their claim until the Teamsters Plan in 1976 denied Miles a pension. This finding of fact is not clearly erroneous. We therefore proceed on the basis that the plaintiffs' suit was timely filed.
 
 
 16
 The Teamsters Plan argues that Judge Elfvin, in analyzing the plaintiffs' claim, exceeded the scope of judicial review which may properly be applied to the actions of pension plan administrators. We agree. Moreover, in our view of the record, we cannot say that the Board's conduct was arbitrary and capricious.
 
 
 17
 In order to avoid excessive judicial interference with pension plan administration, the federal courts of appeals generally have applied an "arbitrary and capricious" standard of review in actions challenging the decisions of plan administrators. See Dennard v. Richards Group, Inc., 681 F.2d 306, 313 & n. 11 (5th Cir.1982) and cases cited therein. We have stated that the lawful, discretionary acts of a pension committee should not be disturbed, absent a showing of bad faith or arbitrariness. Pompano v. Michael Schiavone & Sons, Inc., 680 F.2d 911, 915 (2d Cir.1982). Accord, Haeberle v. Board of Trustees of Buffalo Carpenters, 624 F.2d 1132, 1136 n. 6 (2d Cir.1980); Riley v. MEBA Pension Trust, 570 F.2d 406, 410 (2d Cir.1977); Wyper v. Providence Washington Ins. Co., 533 F.2d 57, 62 (2d Cir.1976); Beam v. International Org. of Masters, Mates & Pilots, 511 F.2d 975, 980 (2d Cir.1975). Where the trustees of a plan impose a standard not required by the plan's provisions, or interpret the plan in a manner inconsistent with its plain words, or by their interpretation render some provisions of the plan superfluous, their actions may well be found to be arbitrary and capricious. See Morgan v. Mullins, 643 F.2d 1320, 1321, 1324 (8th Cir.1981); Maness v. Williams, 513 F.2d 1264, 1267 (8th Cir.1975). However, the limited standard of review applied in these cases does mean that the trial court should not conduct a de novo hearing on a rejected applicant's eligibility for benefits, see Wardle v. Central States, Southeast & Southwest Areas Pension Fund, 627 F.2d 820, 824 (7th Cir.1980), cert. denied, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981), or disregard a pension committee's reasonable interpretation of plan provisions. We fear that the district judge, in reviewing the plaintiffs' claim, failed to adhere to these limitations.
 
 
 18
 The district judge analyzed the plaintiffs' claim in two steps. First he decided upon a "correct" interpretation of the new group rule. Second he considered whether the Board's failure to adopt the "correct" interpretation was arbitrary and capricious.
 
 
 19
 The district judge found that under the "correct" interpretation of the new group rule the plaintiffs constituted a new group. He cited four principal items of evidence as supporting his interpretation of the rule: (1) the testimony of Walker and Clayton that the plaintiffs were a new group; (2) the January, 1970 execution of a new participation agreement between Local 449 and Continental requiring Continental to make contributions to the Teamsters Plan on behalf of employees of "Continental Can Co., Inc. # 490;" (3) Moriarty's receipt of benefits from the Health and Hospital Fund, which suggested that Moriarty was a new group member under the Fund's rule; and (4) the "fact," found by him, that the plaintiffs did not have to join the Teamsters Plan when they joined Local 449, but that Local 449 could instead have negotiated a separate pension agreement on their behalf. (From this latter finding the judge concluded that the plaintiffs' entry into the Teamsters Plan was consistent with the purpose of the new group rule to add new bargaining units to the plan). On the basis of this evidence the district judge found that in merging its trucking operations Continental created a new "Participating Employer," Plant No. 490, and that the plaintiffs were employed by that employer at the time it first became obligated to contribute to the Teamsters Plan, i.e., January, 1970. The judge therefore concluded that the plaintiffs were employed by the Participating Employer (Plant No. 490) at the Applicable Effective Date (January 1970), and hence were entitled to past service credit under the new group rule.
 
 
 20
 As the second step in his analysis, the district judge found that the Board had acted arbitrarily and capriciously in failing to reach the "correct" interpretation of the new group rule. The district judge found that the Board in 1969 and 1970 mistakenly believed that a transfer rather than a merger had occurred. Although informed by Clayton that its understanding was incorrect, the Board denied the plaintiffs' claim without further investigation. The district judge concluded that in failing to investigate the plaintiffs' situation when clearly informed that its factual assumptions were incorrect, in failing to notify either the plaintiffs or Local 449 of the 1969 vote, and in failing in 1976 to initiate a new investigation when Miles applied for a pension, the Board acted arbitrarily and capriciously.
 
 
 21
 The Board had interpreted the new group rule quite differently than did the district court. The Board apparently believed that the Participating Employer was, in general terms, the Clay Street plant, and that the Applicable Effective Date was December 11, 1967, the date on which contributions were first made on behalf of the employees belonging to the Clay Street bargaining unit (Local 449). The Board knew that the plaintiffs had joined the covered bargaining unit (Local 449) in the summer of 1969, and that Continental had not made contributions on the plaintiffs' behalf prior to that time. The Board therefore concluded that the plaintiffs were not employed by the Participating Employer at the Applicable Effective Date and hence did not qualify for new group status. We cannot say that this conclusion was irrational. The district judge himself found that an "employee [who] becomes a member of a particular bargaining unit after the date on which the bargaining unit first participates in the Teamsters Plan ... is not entitled to receive past service credit." Equally important, both the policy underlying the new group rule and the rule's financial implications suggest that the Board acted rationally. As the district judge found, the rule is intended to induce independent bargaining units to join the Teamsters Plan. The inducement offered is the guarantee of past service credit to the members of the independent units. The district judge found that the plaintiffs did not have to participate in the Teamsters Plan when they joined Local 449, and that Local 449 could have negotiated a separate pension agreement on their behalf. He therefore concluded that extension of new group status to the plaintiffs would have been consistent with the rule's policy. We believe, however, that the district judge's finding of fact on this issue is clearly erroneous. The clear weight of the evidence indicates that the plaintiffs were not an independent unit, but instead had to join the Teamsters Plan upon joining Local 449.[5] As the Board, therefore, did not need to grant the plaintiffs special treatment in order to add them to the plan, we reject the district judge's conclusion that the policy behind the rule supported the plaintiffs' application. Instead, because the plaintiffs could not freely accept or reject participation in the plan, the rule's policy was not implicated. With regard to the financial consequences of granting new group status, it must be remembered that a grant of past service credit requires the Teamsters Plan to pay benefits for which the appropriate employer contributions were never paid. It thus appears that in denying the plaintiffs new group status the Board merely declined to impair the plan's financial condition for the benefit of employees who had to participate. Where both the trustees of a pension fund and a rejected applicant offer rational, though conflicting, interpretations of plan provisions, the trustees' interpretation must be allowed to control. Lowenstern v. International Ass'n of Machinists and Aerospace Workers, 156 U.S.App.D.C. 228, 479 F.2d 1211, 1213 (1973). The facts and policies discussed immediately above convince us that the Board's interpretation of the rule was rational. The district judge should not have overturned the Board's decision.[6]
 
 
 22
 Our conclusion that the Board's interpretation of the new group rule was rational, and should not be set aside, disposes of the claim that the Board's decision-making process was arbitrary and capricious. Nonetheless, we think it necessary to note our disagreement with the district judge's statement that that the Board exhibited "an extremely cavalier attitude" toward the plaintiffs. The Board's misunderstanding of the facts does not appear to have affected its decision. Although Sol Tabor, the actuarial consultant to the Teamsters Plan, testified that if two corporate divisions merge, and enter into a new bargaining agreement providing for contributions, the employees will be entitled to past service credit, it does not adequately appear that Tabor's testimony was directed to a situation where, as here, one of the merged divisions previously was participating in the plan. Instead, under the Board's interpretation of the new group rule, the new employees of a previously participating Participating Employer are not entitled to past service credit regardless of whether they are merged or transferred into the applicable bargaining unit. Thus Tabor testified that the plaintiffs could not have obtained past service credit by entering into employment with the previously participating Clay Street Participating Employer, but only by forming a separate bargaining unit at the Shawnee Road plant (which then would be a separate Participating Employer) and independently joining the plan. Nor do we see "cavalier" behavior in the Board's failure to initiate its own investigation into the plaintiffs' circumstances. The district judge found that "the Board demonstrated repeated willingness to receive and consider additional information concerning plaintiffs' status." Given that finding, the mere failure to initiate an investigation cannot support a charge of gross disregard of duty.[7]
 
 
 23
 We conclude, therefore, that the Board interpreted the new group rule rationally and did so with adequate regard to the duties it owed the plaintiffs. We accordingly reverse the judgment granted the plaintiffs on their second and fifth causes of action.
 
 
 24
 Our reversal of the judgment also requires that the award of attorneys' fees to the plaintiffs be set aside. Although success on the merits is not, in theory, indispensable to an award of attorneys' fees under 29 U.S.C. Sec. 1132(g)(1),[8] rarely will a losing party in an action such as this be entitled to fees. At least three of the five factors ordinarily considered in reviewing requests for attorneys' fees under Sec. 1132(g)(1) are affected by success on the merits.[9] Thus, in an action brought to redress the private rights of individual applicants, "(a)n altogether sufficient support for (a) court's decision not to award attorney's fees under ERISA is that the attorney obtained no relief under that statute." Fase v. Seafarers Welfare & Pension Plan, 589 F.2d 112, 116 (2d Cir.1978). In the present case, the three reasons cited by the district court to support the award of attorneys' fees--the relative merits of the parties' positions, the need to deter "callous" behavior by pension plan trustees, and the Board's "gross and deliberate indifference" to the plaintiffs' claim--no longer are valid under our view of the case.
 
 
 25
 The judgment for the plaintiffs is reversed; the award of attorneys' fees is vacated.
 
 
 
 [1]
 All of the plaintiffs had worked for Continental or a predecessor corporation for a substantial number of years prior to July 1, 1969. Harold Miles began employment with Continental in March, 1953, Eugene Darlak in March, 1959, Timothy Moriarty in February, 1953, James Stuermer in January, 1957, and Edward Zastrow in December, 1948
 
 
 [2]
 Section 3(2) provides:
 A member [of the Teamsters Plan] who becomes a member after January 1, 1954 shall be entitled to credit for service as an Employee ... pursuant to (a) or (b) of this subsection, only for the time spent in the employ of one or more Participating Employers in contractual relations with the Union, provided on January 1, 1954, or the Applicable Effective Date, whichever shall later occur, he was an Employee of the class for whom Contributions have been made since January 1, 1954. Such service shall be credited for the following periods and the member shall have the right to designate the alternative of his choice:
 (a) Credit for service prior to January 1, 1954;
 (b) Credit for service prior to the Applicable Effective Date, as above defined.
 ... if a member becomes a member on or after January 1, 1959, he shall be limited to a maximum of 20 years' credit for service as an Employee...
 
 
 [3]
 "Participating Employer" and "Applicable Effective Date," are defined in sections 1(2) and 1(13) of the Plan:
 (2) "Participating Employer" means any person, firm, or corporation having a collective bargaining agreement with the Union which is authorized by the Board of Trustees to participate in the Plan upon appropriate action by such employer acceptable to the Board of Trustees.
 (13) "Applicable Effective Date" means such date after January 1, 1954 on which a Participating Employer, as herein defined, shall first become obligated to make and does make Contributions to the Fund on behalf of Employees in accordance with the provisions of the Collective Bargaining Agreement and the rules and regulations of this Fund.
 
 
 [4]
 The plaintiffs do not appeal from the judgment granted the defendants on their first, third, fourth, sixth, and seventh causes of action
 
 
 [5]
 The district judge's finding is supported only by certain testimony by Clayton. Clayton, however, later contradicted that testimony and in his clearest testimony on the point indicated that the plaintiffs' participation was mandatory. Miles, Moriarty, Stuermer, and Zastrow all testified to their understanding that they had to join the Teamsters Plan when they joined Local 449. The National Master Freight Agreement unambiguously required Continental to contribute to the Teamsters Plan on the plaintiffs' behalf as soon as the plaintiffs joined Local 449. See Articles 38(1)(a) and 53(1) of the New York State Teamsters Joint Council Freight Division Local Cartage Supplemental Agreement for the period April 1, 1967 to March 31, 1970 (supplement to and part of the National Master Freight Agreement for the period commencing April 1, 1967). Because we are left with a "definite and firm conviction that a mistake has been committed," the fact that some evidence supports the district judge's finding does not preclude us from treating that finding as clearly erroneous. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed.2d 746 (1948)
 
 
 [6]
 We believe, moreover, that the evidentiary support for the district judge's interpretation of the rule was not so great as the judge himself believed. As previously noted, the district judge's finding that the plaintiffs could have refused participation in the Teamsters Plan is clearly erroneous. Moreover, we would have evaluated the testimony of Walker and Clayton cognizant that both were defendants in this action and present or former union representatives of the plaintiffs. As no evidence or testimony was received to explain the operation of the Health and Hospital Fund's new group rule, we would have placed little emphasis on Moriarty's receipt of benefits from the Fund
 
 
 [7]
 The Board did not individually notify the plaintiffs of the September, 1969 vote denying Continental's application to have them treated as a new group. We see no reason why the Board could not have given such notice. However, the Board did communicate the vote to Continental, and the plaintiffs' union representative, Clayton, was present at and had knowledge of the vote. The Board could reasonably have believed that Clayton or Continental would inform the plaintiffs
 
 
 [8]
 Section 1132(g)(1) states:
 In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.
 (Emphasis added).
 
 
 [9]
 The five factors are: (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action sought to confer a common benefit on a group of pension plan participants. Ford v. New York Central Teamsters Pension Fund, 506 F.Supp. 180, 183 (W.D.N.Y.1980) (Elfvin, J.), aff'd., 642 F.2d 664 (2d Cir.1981)