788 F.2d 1021
 J.J. WITMEYER, Jr., Appellant,
v.
Richard I. KILROY, Donald A. Bobo, Frank T. Lynch, E.J.
Neal, and Richard C. Smith, Individually and as
Trustees of the Railway Clerks Staff
Retirement Fund, Appellees.
 No. 85-1917.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 7, 1986.
Decided April 22, 1986.
 
 John J. Witmeyer, III (Ford, Marrin, Esposito & Witmeyer, Martin S. Protas, Protas, Kay, Spivok & Protas, on brief), for appellant.
 Raymond J. Sweeney (Guerrieri & Sweeney, P.C., Irving Schwartzman, Savage & Schwartzman, on brief), for appellees.
 Before SPROUSE, CHAPMAN and WILKINSON, Circuit Judges.
 SPROUSE, Circuit Judge:
 
 
 1
 J.J. Witmeyer, Jr., a former employee of the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees (BRAC), appeals from a decision of the district court in favor of the defendants, trustees of the Railway Clerks Staff Retirement Plan (the Plan). Witmeyer involuntarily retired from BRAC in 1983, but receives a pension from the Plan. In July 1984, he filed this action against Richard I. Kilroy, Donald A. Bobo, Frank T. Lynch, E.J. Neal and Richard C. Smith, individually and as trustees of the Plan, contending that their method of including certain other BRAC employees in the Plan was illegal. The district court dismissed, in part, Witmeyer's claim for lack of jurisdiction, refused to allow Witmeyer to amend his complaint to add a state law claim and granted summary judgment with respect to the remainder of the complaint. We affirm.
 
 
 2
 Contributions by BRAC and its employees now fund the Plan which BRAC established on June 30, 1955 in order to provide retirement benefits to certain BRAC employees. The Plan's initial definition of credited service for employment included periods of BRAC employment prior to the Plan's effective date, although these periods were unfunded by either employer (BRAC) or employee contributions. The Transportation-Communication Employees Union (TCEU) merged into BRAC effective as of 1969, and the American Railway & Airway Supervisors Association (ARASA) merged into BRAC effective as of 1980.[1] The TCEU and ARASA employees became BRAC employees and Plan participants as the result of the mergers.
 
 
 3
 In the mergers BRAC interceded to have the Plan provide TCEU and ARASA employees with pension benefit protection. This extension of coverage, of course, required agreements between BRAC and the Plan trustees and amendment of the Plan by its trustees. The agreements allowed former TCEU employees to participate in the Plan as of 1969 and former ARASA employees to participate in the Plan as of 1980. Transferring employees received credit towards retirement for each year they had worked for their union in the past (past service credit) and for each year they would work for BRAC in the future (future service credit). Because the transferring employees brought with them accumulated past service credit, the Plan obviously assumed financial obligations when it admitted these employees as participating members.
 
 
 4
 Prior to each of the mergers, the trustees sought to meet these additional financial obligations by complying with the recommendations of the Plan's actuary. In 1968, the trustees asked the Plan's actuary to prepare an actuarial study to determine the basis upon which TCEU employees could participate in the Plan. The actuary recommended that BRAC, the employer, fund part of the financial obligation incurred by the Plan by a lump sum payment. He recommended that the remaining unfunded obligation be amortized over the same period as the existing unfunded obligation which had been created at the formation of the Plan. The trustees adopted his recommendations. Similarly, when the trustees considered the addition of the ARASA employees, the actuary recommended that BRAC pay a partial lump sum of $67,500 into the Plan for the benefit of the ARASA employees, with the balance of their past service credit to be amortized over the same period of time in which the Plan's total unfunded reserves were then being amortized. BRAC made the lump sum payment, and it was determined that the unfunded obligation for past service credit could be and would be amortized as recommended by the actuary. Independent audits of the Plan for all of the years since the mergers indicate that the Plan's financial base has continued to increase and that contributions have exceeded expenses, including retirement payments, by as much as one-half million dollars a year.[2]
 
 
 5
 The gravamen of Witmeyer's action is that the Plan trustees improperly awarded TCEU and ARASA employees credit for years of pre-merger employment without sufficiently funding the obligation which that award imposed on the Plan. Witmeyer alleged that the trustees' actions violated the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Sec. 1001 et seq. (1982).
 
 
 6
 The district court dismissed the portion of Witmeyer's complaint relating to the former TCEU employees' prior service credit on the grounds that it lacked jurisdiction under ERISA over any act or omission which occurred prior to 1975. 29 U.S.C. Sec. 1144(b)(1).[3] Witmeyer subsequently moved to amend his complaint to include his grievance relating to the 1969 TCEU merger as a pendent state law claim. The district court ruled that any such claim was barred by laches. The court also granted the defendants' motion for summary judgment on the portion of the complaint attacking the trustees' decision to grant former ARASA employees prior service credit. The court ruled that there was no genuine issue of material fact and that the trustees did not abuse their discretion in amending the retirement plan to include the ARASA employees. Witmeyer appeals the rulings denying his motion to amend his complaint and granting BRAC summary judgment on his claims arising from the ARASA merger.
 
 
 7
 We first dispose of Witmeyer's contention that the district court abused its discretion in refusing to permit him to amend his complaint to include state common law claims relating to the granting of prior service credit to TCEU employees. Witmeyer filed his original complaint in May 1984 and sought to add the state claim in diversity in May 1985, over thirteen years after the BRAC-TCEU merger.[4] Audits of the Plan were conducted regularly between 1969 and 1984 and were available to participants for inspection. Witmeyer did not object to the inclusion of TCEU employees, however, until after his involuntary retirement from the union staff in 1983. The proposed amendment of his complaint appears to be an afterthought following the district court's correct dismissal of the ERISA action relating to the TCEU employees on jurisdictional grounds. A review of the applicable equitable considerations persuades us that the district court properly applied the doctrine of laches in barring Witmeyer's proposed amendment, and did not abuse its discretion by denying the motion to amend.
 
 
 8
 We next consider Witmeyer's claims with respect to the addition of the ARASA employees with prior service credit. ERISA and the Internal Revenue Code contain stringent standards governing the funding of retirement plans. 29 U.S.C. Sec. 1082; 26 U.S.C. Sec. 412. ERISA requires that an employer's contributions be sufficient to pay current plan costs and to amortize past service liability within specified time frames. 29 U.S.C. Sec. 1082(b). For example, plans in existence on January 1, 1974, must have their unfunded past service liability amortized over a period of forty years. 29 U.S.C. Sec. 1082(b)(2)(B)(i).
 
 
 9
 We need not analyze these sometimes complicated ERISA provisions, however, because there is no contention that the trustees' method of funding the Plan violated ERISA's funding requirements. The Plan's actuary explained the statutory requirements to the trustees and offered his opinion that the method of funding the liability involving past service credit for the merged employees was fiscally sound. The trustees, acting on that recommendation, amended the Plan and permitted participation by the former ARASA employees.
 
 
 10
 Witmeyer contends, however, that the legal inferences derivable from these facts are different than those suggested by the trustees. He contends that under the general common law of trusts, the original BRAC employees who were participants in the Plan possessed interests which could not be affected without their consent or without a greater demonstration that the trustees' actions had not adversely affected those interests. We know of no such all-encompassing rule of law inhibiting trustees of retirement plans covered by ERISA from amending them if ERISA's general requirements are satisfied. While it is true that ERISA incorporates elements of the common law of trusts, including the trustee's fiduciary duty to the trust's beneficiaries, 29 U.S.C. Sec. 1104(a)(1); Sinai Hospital of Baltimore, Inc. v. National Benefit Fund, 697 F.2d 562, 565-66 (4th Cir.1982), these general principles must be interpreted in light of the specific congressional directives of ERISA.
 
 
 11
 We have consistently held that trustees will not be held to have violated their duties in administering ERISA-supervised trust funds as long as they have interpreted the trust plan in accordance with ERISA and have not abused their discretion by acting arbitrarily or capriciously. District 17 v. Allied Corp., 765 F.2d 412, 416-17 (4th Cir.) (en banc), cert. denied, --- U.S. ----, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985); Berry v. CIBA Geigy Corp., 761 F.2d 1003, 1006 (4th Cir.1985); Horn v. Mullins, 650 F.2d 35, 37 (4th Cir.1981); see Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan, 698 F.2d 593, 599 (2d Cir.), cert. denied, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983). We agree with the district court that the trustees acted in a reasonable and prudent manner. They commissioned their actuary to study the problem and followed his recommendations. In allowing ARASA employees prior service credit, the trustees interpreted the Plan consistent with the decision to grant prior service credit to the original trust beneficiaries when the Plan was established in 1955. It would be difficult to characterize their actions as arbitrary and capricious, and a reviewing court can go no further than to make that determination. To do otherwise would enmesh this court in the details of the administration of every employee trust fund.
 
 
 12
 In view of the above, the judgment of the district court is affirmed.
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 The mergers occurred in 1971 and 1983, respectively, but were made effective retroactively
 
 
 [2]
 In 1982, improved investment return on the Plan's assets reduced the amortization period for the unfunded actuarial reserve from 35.7 years to 23.1 years; in 1983, that period remained virtually the same, 23.3 years
 
 
 [3]
 Witmeyer has not appealed from this part of the district court's decision
 
 
 [4]
 The merger actually occurred in 1971, but Plan participation by former TCEU employees was made effective retroactively to 1969