55 F.3d 109
 Pens. Plan Guide P 23908O, Pens. Plan Guide P 23911G
John P. O'SHEA, Jr., as Executor of the last will and
testament of Marion C. Talbot, Deceased,
Plaintiff-Counterclaim Defendant-Appellant,
v.
FIRST MANHATTAN CO. THRIFT PLAN & TRUST,
Defendant-Counter-Claimant Cross-Claimant,
Victoria M. Lippolis, Individually, and as Parent and
Natural Guardian and Robert Lippolis, as Parent and Natural
Guardian of Jessica L. Lippolis, Nicole K. Lippolis and Keri
M. Lippolis, Infants, Defendants-Cross-Claim-Defendants-Appellees.
 No. 1262, Docket 94-9004.
 United States Court of Appeals,
Second Circuit.
 Argued March 24, 1995.
Decided May 23, 1995.
 
 1
 John E. Ryan, Floral Park, NY (Kwiatkokski & Ryan, Floral Park, NY, and Patrick M. McKenna, McKenna & Schneier, Valley Stream, NY of counsel), for plaintiff-counterclaim defendant-appellant.
 
 
 2
 Louis A.H. Pepper, Great Neck, NY, for defendants-cross-claim-defendants-appellees.
 
 
 3
 Before: KEARSE and LEVAL, Circuit Judges, and BAER, District Judge.*
 
 BAER, District Judge:
 
 4
 This appeal results from litigation among the heirs of Marion C. Talbot. Ms. Talbot worked almost up to her death and never had a chance to enjoy her fully vested retirement benefit of approximately $150,000, which is the bone of contention here. Sadly, legal fees must by now have depleted much of Ms. Talbot's nest egg. Appellant John P. O'Shea, Jr., executor of the last will and testament of Marion C. Talbot, sued the First Manhattan Co. Thrift Plan & Trust (the "Plan") and appellees Victoria M. Lippolis, individually, and as parent and natural guardian, and Robert Lippolis, as parent and natural guardian of Jessica L. Lippolis, Nicole K. Lippolis and Keri M. Lippolis (the "Lippolis Defendants"), for declaratory judgment as to whether they were entitled to payment of Talbot's benefits under the Plan. Both O'Shea and Victoria Lippolis are 25% residuary beneficiaries under Talbot's will. The Plan asserted an interpleader claim and deposited Talbot's benefit into court.
 
 
 5
 O'Shea and the Lippolis Defendants cross-moved for summary judgment. O'Shea argued that the lack of a signature invalidated Talbot's beneficiary designation, and therefore, pursuant to certain Plan provisions, the Trustees should have paid Talbot the entire benefit before her death, so that O'Shea could have distributed it under the will. The United States District Court for the Eastern District of New York (Thomas C. Platt, Chief Judge) granted the Lippolis Defendants' motion, holding that the Plan Trustees had not abused their discretion in determining that Talbot had validly designated the Lippolis Defendants as her beneficiaries under the Plan, and denied O'Shea's cross-motion. For the reasons stated below, we affirm the judgment of the district court.
 
 Background
 
 6
 Marion Talbot was born on May 9, 1920, and died on August 21, 1991. She worked for the First Manhattan Company from 1965, past her "Normal Retirement Date" at age 70 1/2, until July 12, 1991, six weeks before her death. Around April 1, 1991, the Plan gave Talbot a small distribution, the minimum which the Internal Revenue Code requires for pension plan participants who reached age 70 1/2 in the preceding year. 26 U.S.C. Sec. 401(a)(9)(A).
 
 
 7
 On June 1, 1991, the Plan sent Talbot the first page of a two-page designation-of-beneficiary form (the "Designation Form"). The second page, omitted due to a clerical error, contained the signature line. Talbot completed the first page listing the Lippolis Defendants as her beneficiaries but did not sign it, presumably because it lacked the signature page. On summary judgment, the parties stipulated to the authenticity of Talbot's handwriting on the Designation Form.
 
 
 8
 Talbot did not elect a method of payment for her benefit during her employment at First Manhattan. On August 13, 1991, a month after her retirement, the Plan sent Talbot a form asking her to elect such a method. Three days later, Talbot completed, signed and returned the form indicating that she wanted her benefit paid to her in a lump sum. When Talbot died five days later, the Trustees had not yet paid the lump sum. Subsequently, the Plan Trustees decided to pay Talbot's interest in a lump sum to the Lippolis Defendants, over O'Shea's objection. The Trustees found the Designation Form to be a valid designation, and followed Plan Sections 8.01(d) and 9.01, which provide that when a participant dies, after having elected a lump sum payment but before it is paid, the lump sum shall be paid to the designated beneficiaries.
 
 Discussion
 
 9
 We review the dismissal of a complaint on a motion for summary judgment de novo. See Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst., 46 F.3d 1264, 1269 (2d Cir.1995). When no genuine issues of material fact are disputed, as is the case here, " 'our task is to determine whether the district court correctly applied the law.' " Pagan v. Nynex Pension Plan, 52 F.3d 438, 441-42 (2d Cir.1995) (quoting Siskind v. Sperry Retirement Program, 47 F.3d 498, 503 (2d Cir.1995)).
 
 
 10
 O'Shea raises two issues on appeal: (1) whether the Trustees breached the provisions of the Plan by failing to make a "mandatory" lump sum distribution to Talbot on April 1, 1991; and (2) whether the district court erred in upholding the legal sufficiency of an "incomplete, unsigned and undated" designation-of-beneficiary form.
 
 
 11
 First, we must address whether the district court applied the correct standard in reviewing the decision of the Plan Trustees. District courts must review the acts of ERISA plan administrators de novo, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956-57, 103 L.Ed.2d 80 (1988), in which case the courts will not disturb the administrator's decision unless it is arbitrary and capricious. Id.; Murphy v. IBM Corp., 23 F.3d 719, 721 (2d Cir.) (per curiam), cert. denied, --- U.S. ----, 115 S.Ct. 204, 130 L.Ed.2d 134 (1994); Miles v. New York State Teamsters Conference Pension & Retirement Fund Employee Pension Benefit Plan, 698 F.2d 593, 599 (2d Cir.) ("[D]iscretionary acts of a pension committee should not be disturbed, absent a showing of bad faith or arbitrariness."), cert. denied, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983). O'Shea does not dispute that the Plan gives the Trustees discretionary authority to construe the Plan's terms. Section 12.13 of the Plan provides: "The Trustees shall determine any questions arising in the administration, interpretation, and application of the Plan, which determination shall be binding and conclusive...." Therefore, the district court was correct to apply the arbitrary and capricious standard to the Trustees' decision to pay Talbot's benefit to the Lippolis Defendants. We shall do the same.
 
 
 12
 Under the arbitrary and capricious standard, the scope of review is narrow. Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974). Thus, "we may overturn a decision to deny benefits only if it was 'without reason, unsupported by substantial evidence or erroneous as a matter of law.' " Pagan, 52 F.3d at 442 (quoting Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 45 (3d Cir.1993)). "Where both the trustees of a pension fund and a rejected applicant offer rational, though conflicting, interpretations of plan provisions, the trustees' interpretation must be allowed to control." Miles, 698 F.2d at 601. However, "[w]here the trustees of a plan impose a standard not required by the plan's provisions, or interpret the plan in a manner inconsistent with its plain words, or by their interpretation render some provisions of the plan superfluous, their actions may well be found to be arbitrary and capricious." Id. at 599.
 
 
 13
 A. The Trustees' Failure to Pay the Lump Sum Inter-Vivos
 
 
 14
 O'Shea argues that the district court erred in finding that the Plan administrators discharged their duties, as ERISA requires, "in accordance with the documents and instruments governing the plan." 29 U.S.C. Sec. 1104(1)(D). This argument requires a close examination of the Plan. Section 8.01 of the Plan sets forth several alternative methods of paying benefits to participants. The Trustees relied on Section 8.01(d) in deciding to pay Talbot's benefits to the Lippolis Defendants. That paragraph states:
 
 
 15
 If the Participant dies ... having made an election, before the lump sum is paid (if method (a) was elected), ... then for the purpose of determining how to distribute his Accrued Benefit ... the Participant shall be treated as having died before reaching his Normal Retirement Date (whether he did or not) and the distribution of his Accrued Benefit shall be governed by Article IX....
 
 
 16
 Pursuant to this provision, the Trustees decided to pay the benefits according to Talbot's Designation Form, as provided for in Article IX, Section 9.01, which governs the designation of beneficiaries. We find this to be a reasonable construction of the Plan.
 
 
 17
 O'Shea, however, argues that because Talbot reached age 70 1/2 in 1990 and had not elected a method of payment as of April 1, 1991, the Trustees should have given her the entire benefit in a lump sum on April 1, 1991. He relies on Section 8.04, which provides a "default form" of benefit payment in "a lump sum distribution" for participants who fail to elect a method for payment of benefits. While the Plan does not explicitly state when the Trustees must make this default lump sum payment, section 8.05 indicates that "benefits must commence not later than April 1 of the calendar year following the calendar year in which the Participant attains age 70 1/2." O'Shea argues that the April 1 deadline imposed under Section 8.05 applies to the lump-sum default payment method specified in Section 8.04, and that Talbot's accrued benefits were therefore required to be paid to her in a lump sum on April 1, 1991. Under O'Shea's interpretation of the Plan, the entire accrued benefit should be deemed part of Talbot's estate, subject to distribution under the terms of her will.
 
 
 18
 The Trustees note that around April 1, 1991, they paid Talbot the minimum amount required by the Internal Revenue Code. O'Shea argues that this payment was insufficient. Even assuming that O'Shea's interpretation is reasonable, the only question presented here is whether the Trustees' interpretation is also reasonably consistent with the Plan's terms. We believe that it is. Section 5.01 of the Plan provides that
 
 
 19
 [n]otwithstanding anything to the contrary contained in any of the other provisions of this Plan, a Participant may continue Service as an Employee after his Normal Retirement Date and, subject to Section 8.05, unless the Participant elects otherwise payment of benefits shall not begin until the Participant's actual retirement.
 
 
 20
 In light of this provision, we see nothing unreasonable in the Trustees' determination that the default payment method designated in Section 8.04 did not apply to Talbot on April 1, 1991, because she had not yet retired from First Manhattan, and that Section 8.05 required only that Talbot receive the minimum distribution permissible under the Internal Revenue Code when she reached age 70 1/2. It cannot be said in view of these circumstances that the Trustees' decision to distribute Talbot's remaining benefits pursuant to Article IX of the Plan was arbitrary and capricious.
 
 
 21
 B. The Unsigned Designation-of-Beneficiary Form
 
 
 22
 O'Shea also argues that the Trustees improperly treated Talbot's beneficiary Designation Form as valid, even though it lacked her signature. Section 9.01 of the Plan, entitled "Beneficiary Designation and Benefit Payment" provides, inter alia: "The Trustees may require the Participant to sign appropriate documents to direct the Trustees regarding the settlement of the proceeds of the Investment Fund." (Emphasis added). Judge Platt found that the Plan's use of the word "may" gave the Trustees discretion to accept Talbot's unsigned Designation Form. We agree. In light of the Plan's discretionary language and the stipulated authenticity of the handwriting on the Designation Form, we find ample grounds to uphold the Trustees' decision as being neither arbitrary nor capricious.
 
 
 23
 Finally, O'Shea argues that the Designation Form is invalid because New York Estates, Powers and Trusts Law ("EPTL") Section 13-3.2(e) requires beneficiary designation forms for death benefits to be signed. ERISA's "expansive" language "marks for preemption 'any and all State laws insofar as they ... relate to any employee benefit plan' covered by ERISA." New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., --- U.S. ----, ----, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995) (quoting 29 U.S.C. Sec. 1144(a)). A state law may "relate to" a benefit plan and thereby be preempted even if the law is not specifically designed to affect such plans, or the effect is only indirect. Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990). The Supreme Court has recently reaffirmed its conclusion that in passing 29 U.S.C. Sec. 1144(a) Congress intended
 
 
 24
 "to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government ..., [and to prevent] the potential for conflict in substantive law ... requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction."
 
 
 25
 Conference of Blue Cross & Blue Shield Plans, --- U.S. at ----, 115 S.Ct. at 1677 (quoting Ingersoll-Rand, 498 U.S. at 142, 111 S.Ct. at 478) (bracketed material in Conference of Blue Cross & Blue Shield Plans).
 
 
 26
 In other situations, " '[p]reemption does not occur ... if the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability.' " Conference of Blue Cross & Blue Shield Plans, --- U.S. at ----, 115 S.Ct. at 1679 (quoting District of Columbia v. Greater Washington Board of Trade, --- U.S. ----, ---- n. 1, 113 S.Ct. 580, 583 n. 1, 121 L.Ed.2d 513 (1992)). Section 13-3.2(e) of the EPTL is not in this category. Unlike the garnishment law in Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), the plant closing law in Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), or the escheat law in Aetna Life Ins. Co. v. Borges, 869 F.2d 142 (2d Cir.) cert. denied, 493 U.S. 811, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989), EPTL Section 13-3.2(e) affects key plan documents such as the Designation Form and is therefore preempted by ERISA. Had Congress chosen to impose a signature requirement, it could have done so. To impose such a requirement in New York, but not elsewhere, would frustrate ERISA's goal of establishing a unified national system to safeguard retirement benefits. Fort Halifax, 482 U.S. at 9, 107 S.Ct. at 2216. Thus, because ERISA preempts the EPTL's signature requirement for death beneficiary designation forms, we uphold the Trustees' decision to follow Talbot's designation.
 
 Conclusion
 
 27
 On de novo review, we find that the Plan Trustees' decision was neither arbitrary nor capricious. Accordingly, we affirm the district court's judgment of dismissal.
 
 
 28
 AFFIRMED.
 
 
 
 *
 Honorable Harold Baer, Jr., United States District Judge for the Southern District of New York, sitting by designation