Josephine H. HAILEY, Plaintiff,

v.

**COMMONWEALTH ALUMINUM CORPORATION, Defendant.**

No. PJM 94–2912.

United States District Court,
D. Maryland.

Nov. 1, 1995.

Rebecca Newman Strandberg, Bethesda, MD, for plaintiff.

Raymond C. Kolls and Harry W. Burton, Morgan, Lewis and Bockius, Washington, DC, for defendants.

## OPINION

MESSITTE, District Judge.

### I.

Plaintiff Josephine H. Hailey sues her deceased husband's former employer, Commonwealth Aluminum Corporation ("Commonwealth"), in connection with a an employee benefit known as the Commonwealth Aluminum Corporation Pension Plan for Salaried Employees (the "Plan"). Also named as defendants are the Plan and A.R. Panariello, Commonwealth's manager of employee benefits. Hailey seeks benefits, attorney fees and costs under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.* Defendants ask for summary judgment on the ground that Hailey has failed to exhaust her administrative remedies. Having considered Defendants' Motion and Hailey's Opposition, the Court will GRANT Defendants' Motion for Summary Judgment and dismiss the Complaint without prejudice.

## II.

Summary judgment is appropriate if there is no genuine issue of material fact that could lead a rational trier of fact to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). While all justifiable inferences must be drawn in favor of the non-movant, *Miltier v. Beorn*, 896 F.2d 848, 852 (4th Cir.1990), the non-moving party cannot create a genuine issue of material fact through mere speculation or the building of inference upon inference. *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985).

## III.

These are the salient facts, considered in the light most favorable to Plaintiff:

Plaintiff's deceased husband, Syd H. Hailey, Jr. ("Mr. Hailey") was employed by Commonwealth for approximately 15 years, retiring in 1987. Upon his retirement, Mr. Hailey completed a Commonwealth Employees Application for Retirement Benefits (the "Application") in which he opted to receive pension benefits for his lifetime in the amount of $1,058.52 per month. Plaintiff's signature ostensibly appears on the Application, along with that of Defendant Panariello. Monthly payments in the indicated amount began with Mr. Hailey's retirement and ended at his death in May 1992.

Sometime after her husband's death, Plaintiff called Commonwealth and inquired about her status as a continuing beneficiary of the Plan. She was advised at that time that, because there had been an election for a single life annuity rather than a joint and survivor annuity, she would not be a continuing beneficiary. On September 23, 1993, Panariello mailed a copy of the Application to Plaintiff.[1] On November 11, 1993, Common-wealth forwarded another copy of the Application to Plaintiff, this time enclosing a copy of the Summary Plan Description. The Summary Plan Description included the following relevant passages:

> An application for benefits must be made with the Administrative Committee. Any participant whose claim for benefits is denied in whole or in part will be furnished a written notice from the Administrative Committee. Within 60 days after receipt of the notice an appeal may be made in writing to the Administrative Committee. Within 120 days after the appeal is received, a review will be made and a written decision rendered by the Committee which is final and binding on all parties.
>
> . . . .
>
> ... ERISA provides that all plan participants shall be entitled to ... [f]ile a suit in federal or state court if benefits are improperly denied.

Plaintiff apparently believes, and before this Court avers, that she is entitled to the monthly benefit that would have been available to her after Mr. Hailey's death had the "joint and survivor," as opposed to the single life annuity, option been chosen in the Application. She argues, alternatively or cumulatively, that (1) her signature on the Application was falsified; or (2) her signature was not made before a notary or a plan representative; or (3) she was not at the time informed of the consequences of her signature on the Application. As a result, says Plaintiff, the requisite spousal waiver to convert a joint and survivor annuity to a single life annuity is invalid.[2]

Despite this, Plaintiff apparently chose not to comply with the prescribed claims procedure of the Plan, among other things never appealing in writing to the Administrative

---

1. Plaintiff may have this correspondence in mind when she argues that her "claim" was "denied" on September 28, 1993. However, attached to her Opposition to the Motion for Summary Judgment is a letter dated September 28, 1993, not from the Plan but from Kaiser Aluminum & Chemical Corporation. Mr. Hailey worked at Kaiser Aluminum & Chemical Corporation until June 30, 1972, and the September 28, 1993, letter clearly indicates that its subject matter is the pension he earned at that company.

2. Under ERISA, a plan participant's spouse must consent in writing to an election to waive the joint and survivor annuity form of benefit. *See* 29 U.S.C. § 1055(c)(2). Article VI of the Plan provides that a married employee's annuity will be presumed to be "joint and survivor" unless a waiver has been executed by the non-employee spouse.

Committee. She argues that, on her attorney's advice, she chose not to appeal because the Summary Plan Description said the Committee's determination on appeal would be "final and binding" and because she otherwise thought an appeal would be futile.

## IV.

■ Although it contains no explicit provision to that effect, ERISA has been interpreted to require a claimant generally to exhaust the remedies provided by the employee benefit plan in which she participates as a prerequisite to an ERISA action for denial of benefits under 29 U.S.C. § 1132. *Makar v. Health Care Corp.*, 872 F.2d 80, 82 (4th Cir.1989). The main purposes of the exhaustion requirement are: (1) to uphold Congress' desire that ERISA trustees, not the federal courts, be responsible for their actions; (2) to provide a clear record of administrative action if litigation should ensue; and (3) to assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not de novo. *Denton v. First Nat'l Bank*, 765 F.2d 1295, 1300 (5th Cir.1985).

■ Plaintiff argues, however, that the exhaustion requirement should be suspended in this case because she was not informed of her appeal rights and because Panariello, the Plan's fiduciary, acted in bad faith. On both counts her argument fails.

Some of the cases cited by Plaintiff, it is true, suggest that the exhaustion requirement should be relaxed if there is a material issue of fact as to whether the plaintiff was informed of the appeals process. *See Novak v. TRW, Inc.*, 822 F.Supp. 963, 969 (E.D.N.Y. 1993); *Clay v. ILC Data Device Corp.*, 771 F.Supp. 40, 45 (E.D.N.Y.1991); *Kreml v. Diamond Shamrock Corp.*, 701 F.Supp. 1400, 1403–04 (N.D.Ill.1988); *Lee v. Prudential Ins. Co.*, 673 F.Supp. 998, 1003 (N.D.Cal. 1987). But the threshold problem that confronts Plaintiff is that, as a matter of law, she never made a claim in the first place. As a result, she cannot be heard to say that the Plan failed to notify her of her appeal rights. For the first time in this litigation, in her Opposition to Defendants' Motion for Summary Judgment, Plaintiff contends that she

"applied for benefits to the plan once Mr. Hailey died and those benefits were denied." Plaintiff's affidavits, however, suggest only that she made telephonic inquiries, not that she made a written claim. The limited correspondence from Defendants to Plaintiff consists of brief cover letters transmitting copies of documents; nowhere do they "deny" any "claim for benefits." At the same time, the alleged letter of denial of September 28, 1993, attached to Plaintiff's affidavit, is not from Commonwealth but from a different former employer of Mr. Hailey and is wholly irrelevant to this case. Considering the facts in a light most favorable to her, it appears that Plaintiff did no more than make an informal inquiry about benefits that might be due her and Defendants responded in similar fashion. Defendants were not required to treat Plaintiff's telephone calls as a "claim" requiring a written response and formal notice to Plaintiff of a right to appeal. This is not to say—and Defendants do not say—that the deadline for filing an appeal has run. Quite the contrary: Because no claim has been filed, the appeal clock has not even started to run.

In any case, Plaintiff's suggestion that she was never informed of her appeal rights is belied by her own arguments. In her Opposition to the Motion for Summary Judgment, she states, "When Plaintiff did receive the request [sic] aforementioned copy of the Summary Plan on or about November 11, 1993, the appeal process was defined." Indeed, the Summary Plan description Plaintiff received in November 1993 clearly defined the appeal process—application, grant or denial of benefits, notice, written appeal, administrative review, and judicial review. Moreover, in claiming she forewent an appeal because she feared it would be "final and binding," Plaintiff in effect admits she was aware what her appeal rights were. Her alleged fear that the Administrative Committee's decision might preclude all further remedy because it purported to be "final and binding" was altogether unjustified if not somewhat disingenuous. Not only does the Summary Plan flatly contradict this; counsel for the Plan expressly advised Plaintiff's counsel, by letter dated August 4, 1995, of his

willingness to stipulate that the "final and binding" language "would *not* prevent your client from bringing suit in federal or district court under ERISA if she is dissatisfied with the decision of the Administrative Committee."

Plaintiff also cites two cases in which the exhaustion requirement was waived because the plan fiduciary acted in bad faith. In the first of these, *Riggs v. A.J. Ballard Tire & Oil Co.*, 1992 WL 345584 (4th Cir. Nov. 19, 1992),[3] the employer had failed to furnish to the employee requested material or to take any action on the employee's request for benefits. The president of the company was found to have acted in bad faith; specifically he deprived the employee of benefits due under the plan in retribution for alleged misconduct by the employee. The magistrate judge found that exhaustion of administrative remedies provided in the plan would have been futile and therefore excused it. *Id.* at *1. Based on the clearly erroneous standard, the Court of Appeals affirmed. *Id.* at *2. In the present case, Defendants' alleged misconduct is in no way comparable to the employer's conduct in *Riggs*. The employer there totally failed to take action on the employee's claim or to supply any information sought. Here Defendants not only responded to Plaintiff's inquiries in timely fashion; they encouraged Plaintiff to file a claim and an appeal so the issues might be resolved, at least in the first instance, without direct resort to litigation.

Similarly, *Healy v. Axelrod Constr. Co. Defined Benefit Pension Plan & Trust*, 787 F.Supp. 838 (N.D.Ill.1992), offers little support to Plaintiff's position. In *Healy*, the employee filed a claim with the pension plan; when it was denied, he requested a hearing to "complete the claim review process." Defendants contended that plaintiff's claim was barred because the appeal was untimely under internal plan procedures. Here, as already noted, Defendants take the position that the appeals period has yet to begin.

### V.

Summing up: This case does not as of now belong in federal court. Whatever claim Plaintiff may have, she must first exhaust her administrative remedies set out in the Plan documents. Defendant's Motion for Summary Judgment will therefore be granted and Plaintiff's action will be dismissed without prejudice. Defendants' request for attorney fees and costs will be denied.

---

**3.** *Riggs* is an unpublished disposition, citation of which is disfavored in this Court, except for the purpose of establishing res judicata, estoppel, or the law of the case. *See* Fourth Circuit I.O.P. 36.6.