**Jack F. MAROTTA, Plaintiff,**

v.

**ROAD CARRIER LOCAL 707 WELFARE FUND, Defendant.**

**No. CV 98–6642 (MLO).**

United States District Court,
E.D. New York.

March 16, 2000.

Bernard Weinreb, Suffern, NY, for plaintiff.

Karen Honeycutt, Laura Matlow, Vladeck, Waldman, Elias & Engelhard, P.C., New York City, for defendant.

## MEMORANDUM AND ORDER

ORENSTEIN, United States Magistrate Judge.

Plaintiff Jack F. Marotta ("plaintiff" or "Marotta") brings this action against defendant Road Carrier Local 707 Welfare Fund ("defendant" or the "Welfare Fund"), alleging that the Welfare Fund violated the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), when defendant failed to provide plaintiff with health insurance coverage for his spouse, whom plaintiff married approximately one year after he retired. Defendant moves the Court for an order granting summary judgment pursuant to Fed.R.Civ.P. 56 and dismissing the complaint. Plaintiff cross-moves for an order granting summary judgment in his favor on his claims against defendant pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, the Court grants defendant's motion and denies plaintiff's cross-motion.

## FACTUAL BACKGROUND

On April 1, 1989, Marotta retired from the employ of Tose Fowler, Inc., after having completed thirty-three years of service in the Teamsters Local Union No. 707. (Compl.¶¶ 10–11). At the time of his retirement, Marotta was a participant in the Welfare Fund and the Road Carriers Local 707 Pension Fund (the "Pension Fund").[1]

In connection with his retirement, Marotta submitted to the Pension Fund Office an acknowledgment dated March 17, 1989, confirming that his pension would commence on May 1, 1989, (Alimena Aff. ¶ 18, Exh. J) and an "Election of Medical Benefits or Death Benefit Option," dated April 14, 1989 in which there was no recorded entry under "wife's name" "[wife's] date of

---

1. The Welfare Fund and the Pension Fund are multi-employer plans within the meaning of ERISA, 29 U.S.C. § 1002(37)(A), each of which is administered by a joint Board of Trustees, consisting of three representatives of Road Carriers Local 707 (the "Union") and three representatives of employers who have executed collective bargaining agreements with the Union. (Compl. ¶ 1; Alimena Aff. ¶¶ 4 & 6, Exh. B).

birth," and "Spouse's S.S. #," (Alimena Aff. ¶ 19, Exh. K). At the time of these submissions, Marotta's first wife was deceased. (Compl.¶ 13).

In a letter dated October 3, 1989, the Pension Funds Manager, Albert J. Alimena, notified Marotta that he was eligible for medical and hospital benefits pursuant to the Welfare Fund Plan (the "Welfare Plan"). (Compl.¶ 12, Exh. 2). The letter stated:

> Effective 10/01/89, you are eligible for medical & hospital benefits as a retiree enrolled in our 00714M [Pensioners Medical–Surgical Option] plan. This entitles you and your spouse benefits (until the last day of the month prior to each of your 65th birthdays. If either the participant or the spouse is age 65 at the time this coverage is elected then only that individual who is less than age 65 will be eligible for this coverage)....

(Compl.¶ 12, Exh. 2). On March 30, 1990, Marotta married Marie Elaine Shaw. (Compl. ¶ 14; Alimena Aff., Exh. M).

Shortly thereafter, Marotta "was advised that his spouse was not covered for medical benefits by the Welfare Plan." (Compl.¶ 15). In March 1991, the Welfare Fund Office received a verbal inquiry from Marotta concerning the eligibility of his current spouse, Marie (Shaw) Marotta for coverage under the Pensioners Medical–Surgical Option. (Compl.Exh. 3; Dft. 56.1 Statement at ¶ 30).[2] By letter dated March 7, 1991, the Fund Manager Alimena responded:

> Pursuant to your request, I have reviewed the eligibility requirements for medical benefits of a pensioner's spouse. For the purpose of entitlement to coverage, a spouse is defined as the *lawful* husband or wife at the *effective date* of retirement, of the eligible pensioner.
>
> Consequently, if an eligible pensioner remarries *after* the effective date of his

or her retirement, no medical coverage will be provided for the spouse.

> If you have any questions, please do not hesitate to contact me.

(Compl.Exh.3) (emphasis in original).

On August 12, 1996, approximately seven years after his retirement, Marotta wrote the following letter to the Board of Trustees of the Welfare Fund and Pension Fund:

> I Jack Marotta was a dedicated union member and shop steward for local 707. I retired in April 1989, because Tose Fowler who I worked for was unable to conduct business after a teamster strike which took place Feb. 1989. I retired at the age of 52 because jobs were scarce and I would have lost my seniority and vacation time.
>
> My first wife passed away and I remarried March 30, 1990. I assumed my present wife would be covered under my health insurance plan.
>
> I wrote the union several times on this issue and Mr. Albert Alimena responded with a form letter stating that my wife was not eligible for medical benefits. To date I have paid over $15,000 for medical insurance for my wife which has been a great hardship.
>
> I would appreciate a copy of all literature stating that my wife was not entitled to my medical benefits. Please be more specific on your denial. I would like to meet with the Board of Trustees concerning this matter.

(Compl.Exh.4).

In a letter dated August 21, 1996, Fund Manager Alimena informed Marotta that "the rules of the Pension Plan are used to define who meets the requirements for coverage as an 'eligible spouse,'" enclosed copies of the relevant plan provisions and denied Marotta's request for a meeting with the Board of Trustees. (Compl. ¶ 18, Exh. 5; Alimena Aff. ¶ 39, Exh. Q). After

---

**2.** "Pl. 56.1 Statement at ¶ __" refers to the plaintiff's Local Civil Rule 56.1 Statement pursuant to Local Civil Rule 56.1(a) of the Local Civil Rules of the Southern and Eastern Districts of New York.

reviewing the enclosed provisions, Marotta wrote Alimena on September 12, 1996, stating that pursuant to the terms of the Welfare Plan, his spouse should have been receiving medical benefits. (Compl.¶ 20, Exh. 6).

Thereafter, defendant requested that its counsel review Marotta's request for medical benefits for his spouse and respond to Marotta. (Compl.Exh.7). Counsel for the Welfare Fund advised Marotta by letter dated September 18, 1996 that

Generally, the Welfare Fund provides medical benefits to pensioners and their spouses until they reach age 65. To determine who is a pensioner's spouse, the Welfare Fund uses the same rules as the Pension Fund. According to those rules, coverage is only provided to the spouse that you were married to at the time you began receiving benefits. Therefore, since you were not married to your current spouse at the time you retired, she is not entitled to medical coverage....

(Compl.Exh.7).

In addition, with respect to Marotta's request to appear before the Board of Trustees for the Welfare Fund, counsel for the Welfare Fund wrote Marotta on November 11, 1996, stating:

You asked to appear before the Trustees of the Road Carriers Local 707 Welfare Fund to obtain medical coverage for your spouse. After some deliberation, the Fund has decided to deny your request to present your argument to the Trustees.

As you know, this is a problem that you have been contesting since 1991. You were originally informed of the Fund's decision by a letter dated March 7, 1991. Generally, a participant has sixty days to appeal a decision of the Fund. Since the sixty-day period expired years ago,

the Trustees will not grant your request for an appeal.

(Compl.¶ 25, Exh. 8).

Approximately one year later, by letter dated August 8, 1997, Marotta, through counsel, "appeal[ed] from the denial of medical coverage for his spouse" to the Welfare Board of Trustees. (Compl.¶ 29, Exh. 11). By letter dated November 19, 1997, counsel for the Welfare Fund responded:

As a follow up to our conversation, this is to confirm that the Welfare Fund's position with respect to Mr. Marotta's claim for coverage for his spouse. Mr. Marotta has exhausted his administrative appeals, and the Fund will give no further consideration to his claim.

(Compl.¶ 30, Exh. 12).

On October 28, 1998, Marotta commenced this action, alleging principally that the failure of the Welfare Fund to provide plaintiff with health insurance coverage for his spouse violated ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).[3]

The Welfare Fund now moves for summary judgment contending that plaintiff's claims are barred by the statute of limitations, and that in any event, the complaint fails to state a claim for denial of benefits under 29 U.S.C. § 1132(a)(1)(B). Marotta cross-moves for summary judgment contending that his claims are timely and that his spouse is entitled to health insurance coverage under the Welfare Plan.

### DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex v. Ca-*

---

**3.** Section 1132(a)(1)(B) provides a cause of action for, *inter alia,* a participant in an employee benefit plan covered by ERISA "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

*trett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 36 (2d Cir.1994). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

In considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511. In doing so, "[t]he district court must draw all reasonable inferences and resolve all ambiguities in favor of the nonmoving party and grant summary judgment only if no reasonable trier of fact could find in favor of the nonmoving party." *Sutera v. Schering Corp.*, 73 F.3d 13, 15 (2d Cir.1995) (citation omitted). Notably, when cross-motions for summary judgment are made, the standard is the same as that for individual motions, and the "court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir.1993) (internal quotation marks and citation omitted).

### (1) Statute of Limitations

■ The Supreme Court has observed that "the length of the [limitations] period allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones." *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 463–64, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975). "[S]tatutory limitation periods are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) (internal quotation marks and citation omitted). "The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Id.* (internal quotation marks and citation omitted); *see also Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 352, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). Therefore, statutes of limitations "for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants," *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1984) (per curiam), and strict adherence to such periods of limitations "is the best guarantee of evenhanded administration of the law," *Mohasco Corp. v. Silver*, 447 U.S. 807, 826, 100 S.Ct. 2486, 2497, 65 L.Ed.2d 532 (1980).

■ Marotta's claims arise under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which provides a plan beneficiary with a cause of action to recover benefits due under an employee benefit plan. Because ERISA does not prescribe a limitations period for commencement of actions arising under § 1132 for recovery of employee benefits, federal courts will apply the most analogous state statute of limitations. *See Miles v. New York State Teamsters Conference Pension & Retirement Fund Employee Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir.1983); *see generally North Star Steel Co. v. Thomas*, 515 U.S. 29, 33–35, 115 S.Ct. 1927, 1930–31, 132 L.Ed.2d 27 (1995) ("state statutes have repeatedly supplied the periods of limitations for federal causes of action when the federal legislation made no provision, and in seeking the right state rule to apply, courts look to the state statute most closely analogous to the federal Act in

need") (internal quotation marks and citations omitted). In this case, the Second Circuit has held, and the parties agree, that in New York, the six-year statute of limitations period prescribed by New York C.P.L.R. § 213 for contract actions governs an ERISA benefits claim.[4] *See Miles,* 698 F.2d at 598.

The parties disagree, however, on the accrual date of plaintiff's ERISA cause of action. According to defendant, Marotta's ERISA claim accrued no later than March 1991. In plaintiff's view, because defendant failed to provide Marotta with a formal notice of denial that complied with the regulatory claims procedures imposed by ERISA, his claim did not accrue or, if it did accrue, such accrual was not until November 1997, when the Board of Trustees wrote to plaintiff's attorney and stated that the Welfare Fund would give no further consideration to Marotta's claim.

 Although state law determines the limitations period, federal law governs the accrual date for a claim under ERISA. *See Barnett v. International Business Machines Corp.,* 885 F.Supp. 581, 591 (S.D.N.Y.1995). Applying federal law, the Second Circuit has recognized that "[a] plaintiff's ERISA cause of action accrues and the six-year statute of limitations peri-

od begins to run, when there has been a repudiation by the fiduciary which is clear and made known to the beneficiaries." *Miles,* 698 F.2d at 598 (internal quotation marks and citation omitted); *accord Larsen v. NMU Pension Trust of NMU Pension & Welfare Plan,* 902 F.2d 1069, 1073–74 (2d Cir.1990); *Mitchell v. Shearson Lehman Bros., Inc.,* 1997 WL 277381, at *2 (S.D.N.Y. May 27, 1997) ("a § 1132 claim accrues when the plan administrator or insurer clearly and unequivocally repudiates a claimant's right to benefits"). Thus, generally in an ERISA action a claim accrues after a beneficiary has made a formal application for benefits and the fiduciary has unequivocally denied the application. *See id.; Medoy v. Warnaco Employees' Long Term Disability Ins. Plan,* 43 F.Supp.2d 303, 306–07 (E.D.N.Y. 1999); *Patterson–Priori v. Unum Life Ins. Co. of America,* 846 F.Supp. 1102, 1106 (E.D.N.Y.1994).

Recently, the Second Circuit considered the question of whether, or under what circumstances, a cause of action for pension benefits under an employee benefit plan can accrue in the absence of a pension plan's denial of a beneficiary's submission of a formal claim.[5] *Carey v. International*

---

**4.** N.Y.C.P.L.R. 213 provides, in relevant part, that:

The following actions must be commenced within six years:

1. an action for which no limitation is specifically prescribed by law;

2. an action upon a contractual obligation or liability, express or implied, except as provided in section two hundred thirteen-a of this article or article 2 of the uniform commercial code or article 36–B of the general business law....

**5.** In *Carey,* plaintiff had been a member and participant in the Pension Plan of the International Brotherhood of Electrical Workers ("IBEW") from 1965 until his retirement in 1992. *Id.* at 45. Plaintiff inquired by telephone in 1989 about the pension benefits he would receive upon retirement, and the Plan's Secretary responded by enclosing a letter from the plan's actuaries stating that plaintiff was not eligible for pension benefits due to a break in service prior to being vested. *Id.* at

45–46. Thereafter, Plaintiff requested and the Plan's Secretary enclosed the provisions of the Plan relating to breaks in service and vesting. *Id.* at 46. In 1991, plaintiff wrote to the Plan stating he was eligible for benefits upon retirement, the Plan Administrator responded that he was not eligible because of a break in service prior to vesting and advised plaintiff to appeal this decision to the Plan Trustees. *Id.* Plaintiff appealed, the Plan Administrator notified plaintiff in a letter dated October 28, 1991 that the Plan Trustees reviewed his pension service credits and upheld the decisions of the Fund Administrator and Actuaries, and plaintiff stated he received this letter in November 1991. *Id.* Approximately four years after his retirement, plaintiff filed a formal application for pension benefits with the Plan on July 2, 1996. *Id.* The Plan Administrator denied his application in a letter dated January 7, 1997, and plaintiff appealed to the Plan Trustees who affirmed the decision on April 29, 1997. *Id.*

*Brotherhood of Electrical Workers Local 363 Pension Plan,* 201 F.3d 44 (2d Cir. 1999). The Court observed that while this question was a matter of first impression for this Court, other circuits had considered this issue. *Carey,* 201 F.3d at 47 (citing *Union Pac. R.R. v. Beckham,* 138 F.3d 325, 330–31 (8th Cir.1998); *Daill v. Sheet Metal Workers' Local 73 Pension Fund,* 100 F.3d 62, 65–67 (7th Cir.1996); *Martin v. Construction Laborer's Pension Trust,* 947 F.2d 1381, 1384–86 (9th Cir. 1991)).

▇▇ The Court noted:

In each of these cases, the Court held, in part relying on our decision in *Miles,* that a plaintiff's cause of action accrues upon a clear repudiation that is known, or should be known, to plaintiff—regardless of whether the plaintiff formally applied for benefits. *See Beckham,* 138 F.3d at 330–31; *Daill,* 100 F.3d at 66 & n. 5; *Martin,* 947 F.2d at 1384–85. In *Beckham,* the Eighth Circuit reasoned that such a result is consistent with the "discovery rule —the rule that generally governs when a federal claim accrues— pursuant to which 'a plaintiff's cause of action accrues when he discovers, or with due diligence should have discovered, the injury that is the basis of the litigation.'" *Beckham,* 138 F.3d at 330.

*Carey,* 201 F.3d at 47–48.

▇▇ In joining the Seventh, Eighth and Ninth Circuits, the Court pronounced that an ERISA claim accrues "upon a clear repudiation by the plan that is known, or should be known, to the plaintiff—regardless of whether the plaintiff has filed a formal application for benefits." [6] *Id.* at 49. Accordingly, "[o]nce a plaintiff is on clear notice that [he or] she is not entitled to benefits, the cause of action accrues." *Ambris v. Bank of New York,* 1998 WL 702289, at *6 (S.D.N.Y. Oct.7, 1998) (finding, even though plaintiff never applied for benefits and therefore never received a clear repudiation in response to an application, a benefits claim had accrued and the clear repudiation contemplated by *Miles* was present—plaintiff's deposition testimony established (1) her knowledge that she was not eligible for benefits due to her employment status and (2) she had discussed the issue with her supervisor and co-workers).

▇▇ In the instant matter, plaintiff commenced this action on October 28, 1998. Hence, plaintiff's claims for medical benefits for his spouse pursuant to the terms of the Welfare Plan are time-barred under ERISA if they accrued prior to October 28, 1992.

It is undisputed that plaintiff never filed a formal application for medical benefits for his spouse and therefore there was no formal denial of plaintiff's claim. It is likewise undisputed that in response to a verbal inquiry by plaintiff concerning the eligibility of his spouse, defendant reported to plaintiff by letter dated March 7, 1991 that plaintiff's spouse was not eligible

---

**6.** Applying this rule to the facts present in *Carey,* the Court held:

Whether or not Carey filed a formal application for benefits before his retirement in 1992, the Plan clearly and unequivocally repudiated Carey's entitlement to benefits in its October 28, 1991 letter, which reported that the Plan Trustees had denied his appeal. This repudiation became known to Carey no later than early November 1991, when, by his own admission, he received the Plan's letter.... Despite Carey's argument to the contrary, the fact that the Plan did not specify in its October 28, 1991 letter when and why he had incurred a break in service is irrelevant to the fact that there was a known repudiation. *Cf. Ambris v. Bank of New York,* 1998 WL 702289, at *5 (S.D.N.Y. Oct.7, 1998) ("The fact that [the plaintiff] misunderstood the technical term of art that describes the reason for her denial of benefits does not change [the clarity of the plan's repudiation].").... By November 1991, Carey "[had discover[ed]], or with due diligence should have discovered, the injury that is the basis of the litigation." *Beckham,* 138 F.3d at 330. Thus, by November 1991, Carey's claim accrued, and he had until November 1997 at the latest to file suit. *Id.* at 49.

for medical benefits because she was not married to plaintiff as of the date of plaintiff's retirement, advised plaintiff that for purposes of entitlement to coverage, a spouse is defined as the "lawful husband or wife at the effective date of the retirement, of the eligible pensioner," and informed plaintiff that "if an eligible pensioner remarries after the effective date of retirement, no medical coverage will be provided for the spouse." (Marotta Aff. ¶ 6; Compl. Exh. 3). This letter was an unequivocal repudiation by the fiduciary which was "clear and made known" to Marotta, the beneficiary. *Miles*, 698 F.2d at 598.

Moreover, by his own admission and subsequent conduct, plaintiff acknowledged that this letter gave him clear notice that his spouse was not entitled to medical benefits. For example, plaintiff stated:

> I generally did not submit medical bills to the Fund on behalf of my wife, Marie, since 1990 because the Fund informed me by its letter in 1991 that they will not reimburse me for the expenses incurred by her. It would, therefore, have been pointless for me to submit such bills for reimbursement.

(Marotta Aff. ¶ 23). *See also* Pl. 56.1 Statement at ¶ 2 ("Medical expenses were not submitted on behalf of Marie Marotta ... since the Fund insisted that she was not covered under the Welfare Fund. Accordingly, the Marottas felt that submitting claims would be fruitless.").

Finally, despite plaintiff's argument to the contrary, the fact that defendant did not provide plaintiff "with a notice denying his claim in a manner that complies with ERISA" is of no moment.[7] *Carey*, 201 F.3d at 49 (rejecting the argument that when a beneficiary has filed a formal application for benefits, the claim should accrue upon denial of that application; "such a rule would ... render the statute of limitation meaningless: Any employee who had pursued his claim, albeit informally, to a final resolution within the plan, but had failed thereafter to sue within the limitation period, could nevertheless revive his stale claim merely by filing a formal application").[8] Irrespective of whether there

---

7. The Court notes that Marotta never filed a written claim or otherwise pursued the review procedures of the Welfare Plan. (Compl.Exh. 1, at 16–17). While the regulations implementing ERISA do require "[a] plan administrator ... [to] provide to every claimant who is denied a claim for benefits written notice," 29 C.F.R. § 2560.503–1(f), the regulations also state that a claim is considered "filed when the requirements of a reasonable claim filing procedure of a plan have been met." 29 C.F.R. § 2560.503–1(d). In addition, the regulations provide that "[i]f [written] notice of the denial of a claim is not furnished ... within a reasonable time, the claim shall be deemed denied and the claimant shall be permitted to proceed to the review stage." 29 C.F.R. § 2560.503–1(e)(2). The Funds Manager informed Marotta orally and in writing that his spouse was ineligible for medical benefits. Thus, it was Marotta who declined to proceed to the review stage. *See, e.g., Stuhlreyer v. Armco, Inc.*, 12 F.3d 75, 78 (6th Cir.1993) (plaintiff's verbal inquiries did not constitute formal application for benefits, triggering requirement that Fund provide notification of appeal procedures); *Cappiello v. NYNEX Pension Plan*, 1994 WL 30429 (S.D.N.Y. Feb.2, 1994) (holding ERISA beneficiary's claim that she was not afforded opportunity for full and fair review of her case was without merit because having never actually filed the claim for review at issue, she could not be heard to claim that she had improperly been denied notice of the reasons for denial of such a claim); *Barnett v. International Bus. Machs. Corp.*, 885 F.Supp. 581, 594 (S.D.N.Y.1995) (complaint failed to state claim for violation of 29 U.S.C. § 1133 where plaintiff failed to file formal claim for benefits); *Hailey v. Commonwealth Aluminum Corp.*, 903 F.Supp. 910 (D.Md.1995) (no notification of appeal procedures required where plaintiff made only verbal inquiries and did not follow claim procedures).

8. To the extent that the letters sent in response to Marotta's August 12, 1996 inquiry to the Board of Trustees concerning medical coverage for plaintiff's current spouse are a subsequent reconsideration of Marotta's claim for benefits, (Compl.Exhs.5, 7, 8, 12), such correspondence neither revives his otherwise stale claim nor renews the statute of limitations period. *See Carey*, 201 F.3d at 49; *cf. Martin v. Construction Laborer's Pension Trust*, 947 F.2d 1381, 1386–87 (9th Cir.1991) (holding that defendant plan's subsequent reconsideration of plaintiff's claim for benefits

was a denial of an actual application for benefits, the undisputed fact is that in this case there was a clear repudiation by the Welfare Fund that was known, or should have been known to Marotta.

Consistent with the discovery rule, upon receipt of the March 7, 1991 letter, plaintiff "[had] discover[ed], or with due diligence should have discovered, the injury that is the basis of the litigation." *Carey*, 201 F.3d at 49 (internal quotation marks and citation omitted). Thus, plaintiff's cause of action first accrued in March 1991, when plaintiff was unequivocally notified that his spouse was not covered for medical benefits by the Welfare Plan, and plaintiff had until March 1997 at the latest to commence this action. Because plaintiff did not file suit until October 28, 1998, his claim is time-barred.

In any event, assuming arguendo that plaintiff's claim was timely filed, the Court finds that plaintiff fails to state a claim for denial of benefits under 29 U.S.C. § 1132(a)(1)(B).

**(2) Failure to State a Claim for Denial of Benefits Under 29 U.S.C. § 1132(a)(1)(B)**

The parties disagree as to the proper standard of review applicable to the Welfare Fund's decision to deny plaintiff medical benefits for his current spouse. Defendant contends that the arbitrary and capricious standard should be applied because the Trustees of the Welfare Fund had discretionary authority to interpret plan terms and decide eligibility for plan benefits. Plaintiff contends that a *de novo* standard of review is appropriate because the Welfare Plan does not explicitly grant discretion to the Trustees.

 In *Firestone Tire & Rubber Co. v. Bruch*, the Supreme Court instructed:

a denial of benefits challenged under § 1132(a)(1)(B) [of ERISA] is to be reviewed under a *de novo* standard unless

did not renew the statute of limitation peri-

the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Where an ERISA benefit plan does confer discretion on a plan administrator to determine plan eligibility for benefits or to construe the terms of the plan, the arbitrary and capricious standard of administrative review is appropriate. *See Jiras v. Pension Plan of Make–Up Artist & Hairstylists Local 798*, 170 F.3d 162, 166 (2d Cir.1999); *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441–42 (2d Cir.1995).

A review of the benefit plan in this case reveals that it vests the Trustees with discretion to construe the provisions of the Plan and determine eligibility for benefits. Article V, Section 2 of the Road Carriers Local 707 Welfare and Pension Trust Funds Agreement and Declaration of Trust, which established the Funds, provides:

The Trustees shall have the power to construe the provisions of this Agreement and Declaration of Trust and the terms used herein, any plan of benefits promulgated for the Welfare Fund, and the provisions of the Pension Plan. Any construction adopted by the Trustees in good faith shall be binding upon the Union; the Employees, their dependents and beneficiaries; and the Employers. The Trustees shall be the sole judges of the standard of proof required in any pension or welfare matter, and the application and interpretation of the Welfare or Pension Plan, and decisions of the Trustees made in good faith shall be final and binding on all parties.

(Alimena Aff. ¶ 7, Exh. C (1991–1995 Trust Agreement) at 10; Exh. D (1995–Present Trust Agreement) at 10). *See also Road Carriers Local 707 Welfare and Pension Fund Plan*, Article VI, Section 6.03 ("The Trustees shall, subject to the requirements

od).

of the law, be the sole judges of the standard of proof required in any case and the application and interpretation of this Plan, and decisions of the Trustees shall be final and binding on all parties.") (Alimena Aff., Exh. B (Plan as of April 1, 1989) at 48).[9]

Moreover, the Trust Agreement which authorized the discretion exercised by the Fund fiduciary when Alimena provided the March 7, 1991 notice to plaintiff was contained in the Trust Agreement executed on September 12, 1985, as amended "9/86". (Honeycutt Decl., Exh. C). Article V, Section 1 of that Trust Agreement grants the Trustees authority to "take any action respecting such policy or insurance provided thereunder which they, in their discretion, may deem necessary or advisable." (Id.). Article V, Section 2 of that Trust Agreement grants the Trustees "power to construe the provisions of this Agreement and Declaration of Trust and the terms used herein and any construction adopted by the Trustees in good faith shall be binding upon the Union, the Employers and the Employees and their beneficiaries." (Id.).

Finally, the discretionary authority granted to the Fund fiduciaries when the Trustees responded on August 21, 1996 to plaintiff's letter of August 12, 1996, was that contained in the Trust Agreement signed January 24, 1997, and "effective as of September 1, 1995 except for provisions which separately state an effective date." (Alimena Aff., Exh. C).

■ In sum, the Plan documents make clear that the Trustees have discretionary authority to interpret the terms of the Welfare Plan and Pension Plan provisions and to determine eligibility for and entitlement to employee benefits in accordance with the terms of the Plans. Accordingly, defendant's decision to deny health insurance coverage for plaintiff's spouse, whom plaintiff married approximately one year after plaintiff retired, must be upheld unless it was arbitrary and capricious. See Firestone Tire & Rubber Co., 489 U.S. at 115, 109 S.Ct. 948 (where written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, the court will not disturb the administrator's ultimate conclusion unless it is arbitrary and capricious); see also Jiras, 170 F.3d at 166; Pagan, 52 F.3d at 441–42.

■ Under the arbitrary and capricious standard of review, a court may overturn a decision to deny benefits only if the decision was "without reason, unsupported by substantial evidence, or erroneous as a matter of law." Pagan, 52 F.3d at 442. Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decision maker and] ... requires more than a scintilla but less than a preponderance." Miller v. United Welfare Fund, 72 F.3d 1066, 1072 (2d Cir.1995). The court's review of an employee benefit plan's denial of benefits under the arbitrary and capricious standard is limited to the administrative record that was before the fiduciary at the time of the decision. See Omara v. Local 32B–32J Health Fund, 1999 WL 184114, at *2 (E.D.N.Y.

9. Plaintiff argues that the document designated on its cover as "Road Carriers Local 707 Pension Fund Plan as of April 1, 1989," annexed as Exhibit B to the Alimena Affidavit is irrelevant to plaintiff's claims because it contains a date "8/89" in the lower left corner of most pages, and plaintiff retired on April 1, 1989. Plaintiff's argument is unpersuasive. The Pension Fund Plan as of April 1, 1989 states in its introductory letter that the revised plan "includes all amendments [from its inception] through January 1, 1989." (Alimena Aff., Exh. B, at introductory page). More-over, the date "8/89" in the lower left corner refers to the date that the document, which became effective as of April 1, 1989, was printed. (Honeycutt Decl. ¶ 5). The Court observes that the immediately preceding Pension Fund Plan, "Road Carriers Local 707 Pension Fund Plan as of April 1, 1983," contains the identical discretionary language as in the subsequent plan. Compare (Honeycutt Decl. Exh. A (Plan as of April 1, 1983) at 48 with Alimena Aff., Exh. B (Plan as of April 1, 1989) at 48).

Mar.30, 1999) (citing *Miller,* 72 F.3d at 1071).

Plaintiff contends principally that defendant's decision to deny medical coverage under the Welfare Plan for his current spouse was arbitrary and capricious because in determining spousal eligibility, the Trustees utilized the definition of spouse set forth in the Pension Plan. According to plaintiff, the scope of the Trustees' authority to determine eligibility for the Pensioners Medical–Surgical Option was limited to the provisions of the Welfare Plan and the terms used therein. Plaintiff maintains that since "eligible spouse" was not defined in the Welfare Plan, a retiree had the ability to choose spousal coverage at retirement whether or not his spouse was then married to him. Thus, plaintiff argues, defendant improperly denied him medical benefits.

Defendant, on the other hand, contends that because the Welfare Fund Plan expressly granted the administrator broad discretion to interpret plan terms and to decide eligibility for plan benefits, the Trustees' construction of the spousal eligibility requirement was properly based upon the eligibility requirements set forth in the Pension Plan. Specifically, defendant asserts that since the pensioner's eligibility for the Pensioners Medical–Surgical Option is determined exclusively by the terms

of the Pension Plan, it was reasonable for the Welfare Fund fiduciaries to determine the eligibility of the pensioner's spouse by the terms of the same plan. This Court agrees.

A review of the history of the Pensioners Medical–Surgical Option reveals that from its inception in 1966,[10] the Pension and Welfare Funds fiduciaries responsible for determining eligibility for this benefit have restricted eligibility to the pensioner's spouse at the time of retirement. For example, the Pension Plan documents indicate that prior to 1980, the pensioner was required "at the time of retirement" and "prior to the effective date of pension" to elect the benefit for "himself and his spouse" and that "once elected this option may not be revoked."[11] (Dft. 56.1 Statement at ¶¶ 8–10, Alimena Aff., Exhs. E–G). Consequently, under the Pension Plan, if a pensioner had no spouse at the time of retirement, he or she could not elect the Pensioners Medical–Surgical Option for his or her spouse. Moreover, because the election was irrevocable, the pensioner could not make a subsequent election for a subsequent spouse.

Following passage of ERISA in 1974, the Pension and Welfare Plans were revised,[12] and the description of the benefits available under the Pensioners Medical–Surgical Option was moved from the Pen-

---

**10.** On December 8, 1966, the Pension Fund Trustees adopted a motion amending the Pension Plan "to provide an option to a pensioner of a $1,000 death benefit or Blue Cross and GHI Family Doctor plan benefits" to age 65 (the "Pensioners Medical–Surgical Option"). (Alimena Aff., Exh. E, at 2, ¶ P VII).

**11.** At a meeting of the Board of Trustees on May 22, 1968, the Pension Fund Trustees amended the Pensioners Medical–Surgical Option to provide that:

[A]n Employee whose effective date of pension is on or after October 1, 1966 may elect at the time of his retirement to insure himself and his spouse for the Hospitalization and Medical–Surgical benefits provided by the Road Carriers Local 707 Welfare Fund with such insurance to continue until the end of the month immediately preceeding [sic] the month in which the Pensioner

and his spouse each attain age 65. This option must be elected prior to the effective date of pension and once elected this option may not be revoked.

(Alimena Aff., Exh. F at 1–2, ¶ "P IV" and attachment "Exhibit A"). The Pension Plan, as amended through May 22, 1968, incorporated the Pensioners Medical–Surgical Option as Section 15A. (Alimena Aff., Exh. G).

**12.** In 1980, the Trustees issued revised Pension and Welfare Plans, incorporating the requirements of ERISA, including the Joint and Survivor ("Husband and Wife") Pension. The Pensioners Medical–Surgical Option was moved from Section 15A of the Pension Plan to the "Pensioner Benefits" section of the Welfare Plan. (Alimena Aff. ¶ 11, Exh. H at 4, 13).

sion Plan to the Welfare Plan, where they were distinguished from benefits for active employees by the designation "Pension Benefits" or "Medical Benefits to Pensioners." (Dft. 56.1 Statement at ¶ 8; Alimena Aff., Exh. H, R, T). The scope of benefits provided to pensioners in the Welfare Plan were identical to those previously provided in the Pension Plan. (Dft. 56.1 Statement at ¶¶ 9–11). The Pensioners Medical–Surgical Option continued to be restricted to employees who had accumulated certain pension credits as defined in the Pension Plan, and who had rejected the Death Benefit Option set forth in the Pension Plan. (Alimena Aff. ¶ 12, Exh. H at 13; Exh. T at 14–15, 36, 48).

Although the requirements of the Pensioners Medical–Surgical Option remained unchanged, the Trustees after 1980 delineated the restriction on spousal eligibility in terms of the definition of spouse in the ERISA-mandated Husband and Wife Pension,[13] rather than in terms of an "irrevocable pre-retirement election" rule. (Dft. 56.1 Statement at ¶ 14, Exhs. G, T). Even under this definition, however, eligibility for spousal coverage continued to be restricted to the spouse the pensioner was married to at the time the pensioner elected the Medical–Surgical Option, and the pensioner was required to make the election prior to commencement of his pension. (Dft. 56.1 Statement at ¶ 10).

 In summary, because under the plan documents (1) eligibility for pension benefits triggered eligibility for cover-

age under the Pensioners Medical–Surgical Option; (2) the term "Pensioner," as used by the Welfare Plan was defined not in the Welfare Plan, but in the Pension Plan (Alimena Aff., Exh. B at 26); and (3) a retiree was eligible to receive benefits under the Pensioners Medical–Surgical Option only if he or she had accrued the requisite number of credits under the Pension Plan and had declined the Death Benefit Option described in the Pension Plan (Alimena Aff., Exh. B at 12–13), it is clear that a pensioner's eligibility for coverage under the Pensioners Medical–Surgical Option was determined under the criteria set forth in the Pension Plan. Thus, it was neither arbitrary nor capricious for defendant to utilize the definition of spouse in the ERISA-mandated Husband and Wife Pension in determining plaintiff's eligibility for spousal medical coverage pursuant to the Pensioners Medical–Surgical Option.

Inasmuch as the definition of spouse in the ERISA-mandated Husband and Wife Pension required the pensioner to be married to his or her spouse prior to the effective date of retirement, and here, plaintiff married his current spouse approximately one year after the effective date of his retirement, the Court finds no abuse of discretion in defendant's determination that plaintiff was not entitled to medical coverage for his spouse under the Pensioners Medical–Surgical Option. Accordingly, defendant's decision to deny benefits was reasonable and supported by substantial evidence.[14]

**13.** For the ERISA-mandated Husband and Wife Pension to be effective, the participant and his spouse, *inter alia*, must have been married throughout the year preceding the effective date of the participant's pension. (Alimena Aff.Exh. T, at 14–15, 36, 48).

**14.** Notwithstanding, plaintiff argues essentially that since the Welfare Plan did not clearly define or limit the term "eligible spouse" to the person who was married to the pensioner at the time of retirement, the Welfare Plan should be read in conjunction with the Pension Plan to create an ambiguity that should be construed in his favor. Although there is authority that ambiguities in a benefit plan

should be construed in favor of the plan participant, those cases generally involve language that could arguably be interpreted in more than one way. *See, e.g., Rhorer v. Raytheon Engineers and Constructors, Inc.,* 181 F.3d 634, 642 (5th Cir.1999); *UAW v. Yard–Man, Inc.,* 716 F.2d 1476, 1480 (6th Cir. 1983).

Here, upon review of the benefit plans, however, the term "eligible spouse" is susceptible to one interpretation and is therefore unambiguous. *Aramony v. United Way Replacement Benefit Plan,* 191 F.3d 140, 149 (2d Cir.1999) ("[l]anguage is ambiguous when it is capable of more than one meaning when

Finally, this is not a case where the plan contemplates coverage for a different or new beneficiary and the plan provides liberal mechanisms for changing the beneficiary, such as where the terms of the benefit plan provide the participant an opportunity for a beneficiary designation change, *see, e.g., Riordan v. Commonwealth Edison Co.,* 128 F.3d 549, 552 (7th Cir.1997); *Butler v. Encyclopedia Brittanica, Inc.,* 41 F.3d 285, 292 (7th Cir.1994); *Schlesinger v. Johnson,* 1999 WL 997499, at *2 (E.D.La. Nov.1, 1999), or the terms of the benefit plan provide the participant with coverage for a newly acquired or added dependant, *see, e.g., Foster v. State Farm Mut. Auto. Ins. Co.,* 843 F.Supp. 89, 93–95 (W.D.N.C.1994); *Phillips v. Union Bankers Ins. Co.,* 812 S.W.2d 616, 618 (Tex.App.1991); *American Casualty Co. of Reading v. Rosenblum,* 142 So.2d 126, 127–28 (Fla.Dist.Ct.App.1962). In these instances, courts have resolved such claims in accordance with the strict enforcement of the written terms of the plan and have rejected attempts to circumvent the terms of the plan and to look to outside evidence, documentation or policy. *See id.; Krishna v. Colgate Palmolive Co.,* 7 F.3d 11, 16 (2d Cir.1993) ("It would be counterproductive to compel the Policy administrator to look beyond those designations into varying state laws regarding wills, trusts and estates or domestic relations to determine the proper beneficiaries of the Policy distributions."); *Riordan,* 128 F.3d at 552 (if ERISA plan provides liberal mechanisms for changing beneficiaries, court's obligation to strictly enforce terms of plan means allowing participants to do exactly that).

■ In contrast, the plan at issue does not contemplate providing the Pensioner's Medical–Surgical Option benefit to a spouse who was not married to the pensioner prior to the effective date of retirement. There is no mechanism for adding

---

viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement") (internal quotation marks and citation omitted). The fact that an "eligible" spouse was undefined in the Welfare Plan cannot be construed as a provision for coverage for any spouse of the pensioner's choosing; by definition, "eligible" implies that there are certain criteria or qualifications required. *See Webster's Third New International Dictionary of the English Language Unabridged,* (Merriam Webster Inc. 1993) (defining eligible as "1: fitted or qualified to be chosen or used ... 2: worthy to be chosen or selected"). As discussed above, a pensioner's qualification for the Pensioners Medical–Surgical Option is determined solely by the terms and criteria set forth in the Pension Plan. It follows, therefore, that in the context of the entire integrated benefit plans, the eligibility of the pensioner's spouse for this option is determined by the terms and criteria of the same plan.

Here, it is undisputed that Marotta married his current spouse approximately one year following the effective date of his retirement. Nowhere in the plan documents is there any language which can be construed as providing, as plaintiff urges, a pensioner with the opportunity to elect automatic spousal coverage whether or not his spouse was then married to him or to elect coverage for a subsequent spouse. *Cf. Harnischfeger*

*Corp. v. Harbor Ins. Co.,* 927 F.2d 974, 976 (7th Cir.1991) ("Rules of interpretation are tie-breakers" ... and ambiguity will be resolved against an insurer only if there is a "genuine (meaning, substantial) uncertainty, not resolvable by other means."). Rather, the pertinent language in the policy providing for a Husband and Wife Pension and spousal benefits does not provide automatic spousal coverage for a pensioner's spouse and makes clear that a pensioner could elect spousal coverage only for the spouse he or she was married to prior to the effective date of retirement. *See, e.g.,* Alimena Aff., Exh. T at 14 ("Does the Husband and Wife Pension apply to a couple who were married very recently? To be entitled ... the couple must have been husband and wife throughout the year before the pension began and throughout the year before the employee's death."); Exh. T at 48 ("A Husband and Wife pension shall be effective only if the Participant and his spouse were married to each other throughout the year preceding the Effective Date of the Participant's pension. No other spouse shall be entitled to the surviving spouse pension."). Thus, the Court finds no ambiguity that would permit contrary conclusion. *Cf. Miller v. Universal Bearings, Inc. Employee Beneficiary Ass'n Plan,* 876 F.Supp. 1038, 1043 (N.D.Ind.1995) ("Ambiguity will not be artificially created where none exists.").

**164**

or changing the designation of an insured's spouse for spousal benefits anywhere in the Welfare Plan or Pension Plan documents. The provisions in the plan that a pensioner make his election of spousal benefits and submit the name and date of the spouse's birth under the Pensioner's Medical–Surgical Option prior to the effective date of retirement are included in the plan to furnish defendant with a basis upon which to calculate the scope of its future liability for spousal coverage of retirees. (Dft. Reply Mem. of Law at 11). This assures that potential liability flowing from benefits is based on the facts as they existed at the time of retirement and that defendant will not be required to accept an elevated risk at a later time. Inasmuch as a claim under 29 U.S.C. § 1132(a)(1)(B), is in essence "the assertion of a contractual right under a benefit plan," *Strom v. Goldman, Sachs & Co.,* 202 F.3d 138, 142 (2d Cir.1999), whose terms are to be strictly enforced, *see* 29 U.S.C. § 1104(a)(1)(D), in order for this Court to enforce the terms of the Welfare Plan under 29 U.S.C. § 1132(a)(1)(B), Marotta must have "first qualif[ied] for the benefits provided under that plan," *Strom,* 202 F.3d at 142 (internal quotation marks and citation omitted). As Marotta never qualified for spousal coverage under the Pensioners Medical–Surgical Option because he was not married to his current spouse prior to the effective date of retirement, there is no benefit due him under the Plan. *See id.* Accordingly, Marrotta's claims against the Welfare Fund fail on summary judgment.

### CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted, plaintiff's cross-motion for summary judgment is denied, and it is

SO ORDERED.